STOKER, Judge.
This appeal arises from two consolidated suits to enforce two identical promissory notes. The issue in these consolidated suits is whether the trial court erred in reforming two promissory notes to include “in rem” limitations which freed the makers from personal liability. Plaintiffs-appellants, the assignees of the notes, contend on appeal that the trial court erred in finding there was error sufficient to justify a reformation of the notes and supporting security contracts. We affirm.
FACTS
Defendants gave the plaintiffs the two notes involved in this case as part of the consideration for the purchase of the College Manor apartments located in Calcasieu Parish, Louisiana. The plaintiffs filed separate suits against the defendants, seeking *821 to collect on the notes. As the suits were consolidated for trial below, and the facts and issues are the same in both suits, we treat both suits in this one opinion and render a separate judgment in the other suit.[1] The two notes are identical.
The College Manor partnership, consisting of Louis D. Bufkin, Leonard D. Pauley, Sr., Dr. Dalmacio S. Paraguya and James C. Pauley, executed the two promissory notes in favor of M.B.A. Investors, a partnership consisting of Andrew “Sparky” Myers, Wilbur Dru Andrews, Jr. and their spouses. The defendants executed the two notes on August 31, 1983, and each provided for payment of $230,000 five years after the date, plus 10% interest, as part of the purchase price of the College Manor apartment complex. M.B.A. Investors subsequently assigned the two notes to the plaintiffs-appellants, the original partners in M.B.A. Investors.
James C. Pauley, a real estate broker and one of the defendants, negotiated the sale of College Manor apartments which consisted of real property and certain specified items of movable property. Pauley attempted over sometime to bring the parties together, and the sale in this case was preceded by three prior near agreements. Each of these three prior near agreements fell through. Nevertheless, the three unsuccessful negotiations figure in the arguments made in this controversy and in the trial court’s reasoning and the disposition of the case.
The three unsuccessful agreements figure in this controversy because, although they were aborted, they reached considerable refinement and in some respects resembled the final agreement actually reached and out of which this controversy arises. In the unsuccessful negotiations the proposals which resulted provided that certain notes to serve the same function as the two involved in the suits now before us should be “in rem” notes. James C. Pauley frankly admitted at trial that he bungled in putting together instructions to attorney Randal Roach, who prepared the closing documents. Through some “scissors and paste” procedure, he used portions of the aborted contracts drafted in the prior negotiations and inadvertently omitted the provision which would specify that the notes were to be “in rem”. Defendants contend that all parties understood that the “in rem” provision was to be included in the agreement and thus exclude personal liability on the notes. Attorney Roach prepared the documents as he was instructed. As a result the notes sued on were not “in rem” notes and the Act of Sale conveying the property (entitled VENDOR’S LIEN) contains provisions securing the notes but contains no provisions limiting the defendants’ obligations to exclude personal liability on the notes.
After James C. Pauley furnished attorney Roach with the instructions, Roach sent a letter to the parties outlining the closing contracts to be entered into. The letter contains no indication that the notes were to be “in rem” notes. One defendant at least claims he did not receive Roach’s letter. However, one thing is clear: none of the parties read the final documents before signing them.
Before the closing, plaintiff Wilbur Andrews telephoned and discussed changes with Roach’s secretary involving the addition of Leonard Pauley, Sr.’s signature, the removal of the listed individual values of the items covered by the vendor’s lien and a typographical error. No changes were made as to the terms of the promissory notes. The closing was conducted at 8:30 a.m. on August 31, 1983. The documents to be signed were spread out on tables and the parties lined up and signed each one. None of the buyers read the closing contracts before signing them. The press was present for the occasion and took pictures during a reception following the signing.
The total consideration for the sale was $2,260,000 consisting of $800,000 paid in *822 cash, $460,000 in two $230,000 notes (those sued on) payable on or before five years and a $1,000,000 note due and payable on January 1, 1984. At the same time defendants borrowed $1,800,000 from American Bank of Commerce. The bank acquired a first mortgage on the property to secure the $1,800,000 loan. The defendants’ security was subordinate to the bank’s security. Defendants failed to meet their payments on the $1,800,000 note, and the bank foreclosed. The bank acquired the property at the sheriff’s sale for less than the amount which was owed to the bank and resold it to Louis Bufkin. Accordingly, the defendants’ security for their two notes was wiped out. (The $1,000,000 note is not involved in this suit.) The only recourse left to plaintiffs was to seek to hold defendants personally liable on their notes. The plaintiffs filed the two suits involved here for that purpose.
The defendants answered by denying personal liability on the notes and asserting a number of affirmative defenses. At trial, however, the defendants pursued only one of their pleaded defenses; the defense was mutual error for which relief is provided under LSA-C.C. art. 1949.
TRIAL COURT ACTION
The two suits were consolidated for trial. The trial court held in favor of defendants, finding that the parties had intended to limit the makers’ liability on the promissory notes to “in rem” obligations and that the notes did not contain the “in rem” limitation because James C. Pauley gave erroneous instructions to Randal Roach who drafted the documents. In his oral reasons the trial judge found the error was bilateral. The trial judge denied recovery on the notes by reforming them to contain the “in rem” provisions and holding the notes were extinguished when the second mortgage securing them was extinguished. Plaintiffs appeal this judgment.
ISSUES
The trial judge gave rather extensive oral reasons for judgment which were recorded. As a factual matter, the trial judge found that the sellers and the buyers both intended for the two $230,000 notes to be “in rem” notes and the buyers were not to be personally bound on the obligations. This factual issue was hotly disputed by the parties at the trial through the testimony of individuals on both sides of the controversy. While the appellants, the parties seeking to recover on the notes, make strong and impressive arguments to the effect that there were cogent reasons why the final arrangement did not include the “in rem” feature, we nevertheless find that the first and major issue we face involves the manifest error rule. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The trial judge specifically found that the failure of the agreements, including the notes, to include the “in rem” feature was a bilateral error. If this finding was correct, the law is in appellees’ favor. Consequently, the major issue is whether appellants have established manifest error.
The plaintiffs’ brief sets forth various other alleged errors on the part of the trial judge including (1) failure to hold that parties cannot avoid a contract they would not have made if they had read the contract and which they did not read, (2) holding appellants were guilty of misrepresentation or fraud when this defense was not pleaded and no evidence supports such holding, (3) failure to recognize that appellants were holders in due course and immune from the defense of error, and (4) failing to give judgment to plaintiffs-appellants even if they were holders of the note rather than holders in due course.
OPINION
The appellants have not addressed the question of manifest error. The trial court concluded that parol evidence was admissible on the issue of the interest of the parties to make or not make the notes “in rem” notes. He noted that a party cannot ordinarily obtain relief from an obligation in writing which he signs without reading it. However, the trial judge correctly observed that if both sides agree on a certain provision which is omitted from their written contract, the error is bilateral and it can be corrected. LSA-C.C. art. 1949. The trial judge then considered the *823 testimony and evidence before him and concluded that defendants as well as plaintiffs intended that the $230,000 notes be “in rem” notes. His conclusions are based largely on credibility evaluations of the witnesses.
Quite possibly another trier of fact would not have reached the same factual conclusions as the trial judge. The appellants argue persuasively that the motivations which led to agreements in prior negotiations for “in rem” notes were not present in the final agreement reached. Appellant’s contentions are plausible. Nevertheless, we conclude that the trial judge’s conclusion that the agreement in controversy was entered into as a bilateral error is not one which we may overturn under the manifest error-clearly wrong test. Rosell v. ESCO, supra. Consequently, the trial judge’s ruling that the agreement was entered into through bilateral error must stand.
We find no merit to appellants’ other arguments of error. The holding of the trial court that the error was mutual largely takes care of appellants’ arguments concerning failure of the defendants to read the contract documents before signing them. We find that plaintiffs were guilty of no misrepresentation or fraud. Plaintiffs cannot enjoy the benefit of being holders in due course because the notes were transferred to them by their partnership. They were the partnership. They dealt with the defendants in the transaction which created the notes. American Bank & Trust Co. v. Sunbelt Environmental Systems, Inc., 451 So.2d 1111 (La.App. 1st Cir.1984). As plaintiffs were ordinary holders, the defendants are entitled to reformation under LSA-C.C. art. 1949. See Revision Comments-1984 under this article, particularly comment (d).
For the reasons given above the judgment of the trial court is affirmed. The costs of this appeal are assessed to the plaintiffs-appellants.
AFFIRMED.

. The companion suit is entitled Wilbur D. Andrews, Jr., et al. v. College Manor, et al., 587 So.2d 823 (La.App. 3rd Cir.1991) and is number 90-145 on the docket of this court.